1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11   PAUL M. SANDERS, | CASE NO. 10 CV 0514 MMA (AJB) |
| 12                              Plaintiff, | **ORDER:** |
| 13        vs. | **GRANTING DEFENDANT DR. RYAN NELKIN, M.D.'S MOTION TO DISMISS; AND** |
| 14 | |
| 15 | [Doc. No. 7] |
| 16   PALOMAR MEDICAL CENTER *et al.*, | **GRANTING DEFENDANT PALOMAR MEDICAL CENTER'S MOTION TO DISMISS** |
| 17                              Defendants. | |
| 18 | [Doc. No. 8] |

19        On April 22, 2010, Defendants Palomar Pomerado Health (erroneously sued as Palomar

20   Medical Health) and Dr. Ryan L. Nelkin, M.D. filed separate motions to dismiss Plaintiff Paul M.

21   Sanders' complaint.  [Doc. Nos. 7, 8.]  Plaintiff, proceeding *pro se*, submitted oppositions to both

22   motions on June 7 [Doc. Nos. 10, 12] and Defendants submitted reply briefs on June 11 [Doc. Nos.

23   14, 15].  The Court found Defendants' motions suitable for decision on the papers and without oral

24   argument pursuant to Civil Local Rule 7.1(d)(1) [Doc. No. 13].  For the reasons discussed below,

25   the Court **GRANTS** both motions to dismiss.

26                              **BACKGROUND**

27        This action arises from medical services Plaintiff received on December 7, 2009 at Palomar

28   Medical Center ("PMC") in Escondido, California.  [*Complaint*, Doc. No. 1 ¶¶4, 6-10, 12-13.]

1   PMC is owned and operated by Palomar Pomerado Health ("PPH").[1]  [*PPH Mot. to Dismiss*, Doc.

2   No. 8, p.2.]  According to Plaintiff, he arrived at PMC's emergency room with chest pains and

3   high blood pressure.  [Doc. No. 1 ¶¶9-10.][2]  Dr. Nelkin evaluated Plaintiff upon arrival, but PMC

4   "failed to provide an appropriate medical screening examination . . . [and] medical treatment

5   necessary to stabilize Plaintiff's dangerously high Blood Pressure [sic]."  [*Id*. at ¶¶16-17.]  PMC

6   then allegedly discharged Plaintiff in an unstable condition because he did not have medical

7   insurance.  [*Id*. at ¶17.]  Plaintiff asserts the treatment he received on December 7 caused his

8   condition to worsen, "causing him unnecessary physical and emotional pain."  [*Id*. at ¶19.]  On

9   February 2, 2010, Plaintiff again went to the emergency room at PMC.  [*Id*.]  This time, however,

10  Plaintiff had health insurance, and PMC admitted him "for 2 days and stabilized his symptoms of

11  chest pains and unusually high Blood [sic] pressure."  [*Id*.]

12          On March 10, 2010, Plaintiff filed the present action against PMC and Dr. Nelkin alleging

13  five unspecified counts.  [*See* Doc. No. 1, ¶¶14-32.]  Although it is unclear which counts apply to

14  which Defendant(s), or the cause of action Plaintiff purports to assert through each count, the

15  parties agree Plaintiff attempts to allege three types of claims for: violations of the Emergency

16  Medical Treatment and Active Labor Act ("EMTALA") (42 U.S.C. § 1395dd) and the Health

17  Insurance Portability and Accountability Act of 1996 ("HIPAA"), and for medical malpractice.

18                                      **LEGAL STANDARD**

19          A complaint survives a motion to dismiss if it contains "enough facts to state a claim to

20  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

21  court reviews the contents of the complaint, accepting all factual allegations as true, and drawing

22  all reasonable inferences in favor of the nonmoving party.  *Knievel v. ESPN*, 393 F.3d 1068, 1072

23  (9th Cir. 2005).  Notwithstanding this deference, the reviewing court need not accept "legal

24  conclusions" as true.  *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009).  Moreover, it is

25

26          [1] For purposes of Defendants' pending motions to dismiss, the Court will refer to the hospital
    defendant in this action as PMC.

27

28          [2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true
    the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S.
    738, 740 (1976).

improper for a court to assume "the [plaintiff] can prove facts that [he] has not alleged."

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459

U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*,

*supra*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

## DISCUSSION

**1.     FEDERAL CLAIMS**

**(A)     Health Insurance Portability and Accountability Act of 1996**

Plaintiff concedes he cannot state a claim under HIPAA because the statute "does not

provide any private right of action." *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009);

*Pl.'s Opp. to PMC Mot. to Dismiss*, Doc. No. 12, p.6. Because any attempt to amend would be

futile, Plaintiff's HIPAA claim is **DISMISSED** as to all Defendants with prejudice.

**(B)     Emergency Medical Treatment and Active Labor Act**

EMTALA is commonly known as the "Patient Anti-Dumping Act." *Jackson v. East Bay*

*Hospital*, 246 F.3d 1248, 1254 (9th Cir. 2001). Congress enacted the statute in response to

concerns "that hospitals were dumping patients who were unable to pay for care, either by refusing

to provide emergency treatment to these patients, or by transferring the patients to other hospitals

before the patients' conditions stabilized." *Id.* Accordingly, under EMTALA, hospitals must

provide certain minimum care to individuals who come to the hospital's emergency department.

Specifically, if an individual arrives at a hospital's emergency department and requests an

1  examination or treatment for a medical condition, the hospital must provide for (1) "an appropriate

2  medical screening examination" within its capabilities to determine if a medical condition as

3  defined by 42 U.S.C. § 1395dd(e)(1) exists, and (2) treatment to stabilize the individual's

4  condition.  42 U.S.C. § 1395dd(a)-(b); *see also Jackson*, 246 F.3d at 1254-55.  Plaintiff asserts the

5  care he received on December 7 at PMC's emergency department violated his rights under

6  EMTALA because PMC and its doctors did not provide Plaintiff an appropriate medical screening

7  examination and failed to stabilize his medical condition before discharging him.  [Doc. No. 1

8  ¶¶16-17.]  Specifically, PMC allegedly disregarded relevant test results and "made false

9  statements and omissions" in Plaintiff's medical records so it would appear PMC provided

10  Plaintiff adequate treatment under EMTALA.  [*Id.* at ¶17.]

11  **(i)    *Dr. Nelkin***

12  Defendant Dr. Nelkin argues Plaintiff's EMTALA claim should be dismissed because the

13  statute does not provide for actions against individual physicians.  [*Nelkin Mot. to Dismiss*, Doc.

14  No. 7, p.3.]  Plaintiff appears to concede his EMTALA claim against Dr. Nelkin fails as a matter

15  of law, but requests leave to amend.  [*Pl. Opp. to Nelkin Mot. to Dismiss*, Doc. No. 10, p.2, 4.]

16  The Court finds leave to amend would be futile, as it is clear "EMTALA explicitly limits a private

17  right of action to the participating hospital."  *Jackson*, 246 F.3d at 1260.  Section 1395dd(d)(2)(A)

18  provides:

19  Any individual who suffers personal harm as a direct result of a
   participating hospital's violation of a requirement of this section may,
20  in a civil action against the participating hospital, obtain those damages
   available for personal injury under the law of the State in which the
21  hospital is located, and such equitable relief as is appropriate.

22  (emphasis added).  "EMTALA does not allow private suits against physicians."  *Eberhardt v. City*

23  *of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995).  Accordingly, Plaintiff's EMTALA claim

24  against Dr. Nelkin is **DISMISSED** with prejudice.

25  **(ii)    *Palomar Medical Center***

26  PMC asserts Plaintiff's allegations do not state a viable EMTALA claim.  [Doc. No. 8, p.4-

27  6.]  As indicated above, "EMTALA imposes a series of obligations on a hospital emergency

28  department.  First, the hospital must provide an appropriate medical screening examination."

1   *Jackson*, 246 F.3d at 1254 (citing 42 U.S.C. § 1395dd(a)).  Based on the screening, the hospital

2   must determine if an "emergency medical condition" as defined by the statute exists.  *Id.*  Second,

3   if the hospital detects an emergency medical condition, it must provide "for such further medical

4   examination and such treatment as may be required to stabilize the medical condition."  42 U.S.C.

5   § 1395dd(b)(1)(A).

6                    (a)        Sufficiency of Plaintiff's EMTALA Allegations

7           With respect to the first requirement, EMTALA does not impose a national standard of

8   care in screening patients.  *Jackson*, 246 F.3d at 1255; *Eberhardt*, 62 F.3d at 1258.  Rather, the

9   "hospital only must provide a screening examination that is comparable to that offered to other

10  patients with similar symptoms."  *Jackson*, 246 F.3d at 1255.  Here, Plaintiff asserts PMC "failed

11  to provide an appropriate medical screening examination."  [Doc. No. 1 ¶16.]  However, he fails to

12  allege that the screening he received differed from the screening offered to patients with similar

13  symptoms.  In addition, Plaintiff's own allegations contradict his assertion that the screening he

14  received was deficient, because Plaintiff admits PMC "determined that [he] had an emergency

15  medical condition when he presented himself to the [emergency department]."  [*Id.* at ¶16.]  Thus,

16  because PMC allegedly determined Plaintiff suffered from an emergency medical condition, one

17  may logically infer that PMC provided an adequate screening to identify the condition.

18  Accordingly, Plaintiff has not sufficiently alleged that PMC violated EMTALA's screening

19  requirement.

20          Under the second requirement of EMTALA, PMC was also required to stabilize Plaintiff's

21  chest pains and high blood pressure.  Plaintiff alleges PMC failed to stabilize his high blood

22  pressure "by performing an exam that was complaint based and which failed to address affected

23  and potentially affected systems evident by the medical information available to hospital [sic] from

24  triage and tests performed by Hospital [sic]."  [Doc. No. 1 ¶17.]  On a motion to dismiss, the Court

25  may not make factual determinations regarding whether the treatment PMC provided was adequate

26  to stabilize Plaintiff within the meaning of section 1395dd(e)(3).  However, the Court finds

27  Plaintiff has not adequately alleged PMC failed to stabilize his condition, as his allegations

28  regarding the treatment he did (or did not) receive are largely incomprehensible.

In response to PMC's motion to dismiss, Plaintiff directs the Court to paragraph 17 of his complaint in which he asserts PMC made false statements and omissions in Plaintiff's medical records, ignored Plaintiff's medical history, and discharged him in an "unstable condition."  But paragraph 17 is a single, run-on, stream-of-consciousness sentence that does not identify what was deficient in PMC's treatment, or how Plaintiff's condition was "unstable" at the time of discharge.  [Doc. No. 1 ¶17.]  In his opposition, Plaintiff contends "it [is] hard to believe that Hospital would have a policy and or [sic] procedure in effect that would discharge a patient with a Blood Pressure of 190/105."  [Doc. No. 12, p.5-6.]  Plaintiff, however, did not plead his discharge vitals in his complaint, nor did he allege that such vitals indicate PMC failed to stabilize his high blood pressure before discharge.  Accordingly, Plaintiff has failed to establish PMC discharged him without stabilizing his emergency medical condition.  Plaintiff's EMTALA claim against PMC is **DISMISSED** without prejudice, and with leave to amend.

(b)    <u>California's Tort Claim Act Notice Requirement</u>

Defendant PMC also moves to dismiss Plaintiff's EMTALA claim because he did not file a claim with the hospital prior to bringing his civil action, as required by the California Tort Claims Act.  [Doc. No. 8, p.3-4.]  Plaintiff admits he did not file a claim with PMC, but argues the claim requirement does not apply to EMTALA actions.  [Doc. No. 12, p.4-5.]

As a preliminary matter, California's Tort Claims Act (the "Act") only requires notice to *public* entities.  *See* Cal. Gov. Code §§ 911.2, 945.4.  Plaintiff's complaint does not allege whether PMC is a public entity.  However, PMC's motion to dismiss asserts it is a public entity, and Plaintiff does not dispute this fact in his opposition.  [Doc. No. 8, p.4; Doc. No. 15, p.1-2; *see generally* Doc. No. 12.]  Plaintiff does however challenge the admissibility of the documents PMC submits as evidence of its status as a public entity.  [*See* Doc. No. 12, p.4.]  Specifically, PMC requests the Court take judicial notice of two "Statement of Facts Roster of Public Agencies Filing" updates it submitted to the California Secretary of State.  [*See* Doc. No. 8.]  The Court **DENIES** PMC's request for judicial notice.  The Court acknowledges it may take judicial notice of "*certified* public records kept by the Secretaries of State."  *Grassmueck v. Barnett*, 281 F. supp. 2d 1227, 1232 (W.D. Wa. 2003) (emphasis added) (citing *MGIC Indem. Corp. v. Weisman*, 803

F.2d 500, 504 (9th Cir. 1986)).  However, the documents PMC provides are not certified, nor is there any indication the documents were received or accepted by the Secretary of State.  Thus, because their accuracy is reasonably subject to dispute, the documents are not the type judicially noticeable under Rule 201.[3]  However, because Plaintiff does not dispute that PMC is a public entity, the Court next considers whether the Act's notice requirement applies to EMTALA claims generally.  If applicable, Plaintiff will need to allege compliance with the Act in his amended complaint.

The circuits are split as to whether state notice statutes, such as California's Tort Claims Act, apply to causes of action brought under EMTALA.  The Fourth Circuit,[4] and District Courts in Colorado,[5] Utah,[6] and Maine,[7] have held that state notice statutes that contain tolling provisions are inconsistent with EMTALA's two-year statute of limitation, and therefore do not apply in EMTALA actions.  The Ninth[8] and Second[9] Circuits, however, have held that where a state notice statute merely requires a plaintiff to file a notice of claim before commencing a civil action, and does not provide for tolling, the state's requirements may properly be incorporated into EMTALA.  The California Tort Claims Act falls within the latter category of notice statutes, as it does not contain any provisions that are inconsistent with EMTALA.

---

[3] For the same reasons, the Court **DENIES** Dr. Nelkin's identical request for judicial notice [Doc. No. 7-1].

[4] *Power v. Arlington Hospital Ass'n*, 42 F.3d 851, 865-66 (4th Cir. 1994) (state malpractice notice statute does not apply to EMTALA claims).

[5] *Bird v. Pioneers Hospital*, 121 F. Supp. 2d 1321, 1326 (D.C. Colo. 2000) (state notice statute does not apply to EMTALA claims because state statute's accrual and tolling provisions inconsistent with EMTALA two-year statute of limitation).

[6] *Merce v. Greenwood*, 348 F. Supp. 2d 1271, 1276 (D.C. Utah 2004) (failure to comply with state procedure does not bar EMTALA claim).

[7] *Hewett v. Inland Hospital*, 39 F. Supp. 2d 84, 86 (D.C. Me. 1999) ("EMTALA does not incorporate and directly conflicts" with state notice statute).

[8] *Draper v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993) (Oregon's notice of claim statute applies, as it is not inconsistent with EMTALA).

[9] *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793-95 (2d Cir. 1999) (New York state notice requirement consistent with EMTALA statute of limitation).

- 7 -

10cv514

1    In relevant part, the Act provides:

2         A claim relating to a cause of action for death or for injury to a person
          . . . shall be presented . . . not later than six months after the accrual of
3         the cause of action. . . . [Further,] no suit for money or damages may be
          brought against a public entity on a cause of action for which a claim
4         is required . . . until a written claim therefor has been presented to the
          public entity and been acted upon by the board or deemed to have been
5         rejected by the board.

6    Cal. Gov. Code §§ 911.2, 945.4.  As the Ninth Circuit explained in *Draper*, "a state statute

7    directly conflicts with federal law in either of two cases: first if compliance with both federal and

8    state regulations is a physical impossibility . . . or second, if the state law is an obstacle to the

9    accomplishment and execution of the full purposes and objectives of Congress."  *Draper*, 9 F.3d at

10   1393 (citations omitted).  Here, the Act's notice requirement does not directly conflict with

11   EMTALA's two-year statute of limitation because it is entirely possible for plaintiffs to comply

12   with both provisions, as they need only submit a notice of claim within six months and file their

13   lawsuit within two years of injury.  *See Draper*, 9 F.3d at 1393.  Moreover, EMTALA expressly

14   states, "[t]he provisions of this section do not preempt any State or local law requirement, except

15   to the extent that the requirement directly conflicts with a requirements of this section."  42 U.S.C.

16   § 1395dd(f).

17       In addition, the Act is not inconsistent with the objective of EMTALA.  As explained

18   above, Congress enacted EMTALA to prevent patient dumping, whereas the Act is intended to

19   provide public entities prompt notice of potential claims "so they can make an early investigation

20   of the facts and . . . decide whether the problem calls for litigation or settlement."  *Mohlmann v.*

21   *City of Burbank*, 179 Cal. App. 3d 1037, 1034 (1986).  Requiring early notice of a potential

22   EMTALA claim is not inconsistent with Congress' goal of preventing hospitals from turning away

23   patients who cannot pay, even if non-compliance with the state law will cause the plaintiff to lose

24   his claim.  *See Draper*, 9 F.3d at 1393 (quoting *Robertson v. Wegmann*, 436 U.S. 584, 594-95

25   (1978) ("mere fact of abatement of a particular lawsuit is not sufficient ground to declare state law

26   'inconsistent' with federal law")).  Accordingly, the Act's notice of claim requirement is not

27   preempted by EMTALA, and Plaintiff was required to provide PMC notice of his purported claim.

28   Plaintiff, however, asserts that even if the claim requirement applies, his noncompliance is excused

1   by PMC's failure to comply with California Government Code § 53051(b), which governs

2   reporting requirements for public agencies.  [Doc. No. 12, p.4.]

3                    (c)      California Government Code § 53051

4            A public agency is required to provide certain information to the Secretary of State and the

5   "county clerk of each county in which the public agency maintains an office," "within seventy (70)

6   days after the date of commencement of its legal existence." Cal. Gov. Code § 53051(a).  In

7   addition, the public agency has a continuing obligation to provide updated information to the

8   Secretary of State and county clerk(s) within 10 days of any change.  *Id* at § 53051(b).  If a public

9   entity *substantially* fails to comply with these requirements, plaintiffs are relieved of the claim

10  presentation requirement under the Act.  Cal. Gov. Code § 946.4(a); *Wilson v. San Francisco*

11  *Redevelopment Agency*, 19 Cal.3d 555, 558 (1977).  Plaintiff therefore asserts he was not required

12  to provide PMC notice of his EMTALA claim because the information PMC provided to the

13  Secretary of State on December 29, 2008 and April 12, 2010, did not comply with section

14  53051(b).  PMC does not address the alleged deficiencies in its filings with the Secretary of State.

15          The Court, however, need not decide whether PMC's Secretary of State filings

16  substantially comply with section 53051(b) for two reasons.  First, the Court denied PMC's

17  request for judicial notice of the filings so they cannot be considered for purposes of the pending

18  motion.  Second, Plaintiff asserts he is exempt from the Act's notice requirements for the first time

19  in his opposition to PMC's motion.  Plaintiff cannot survive dismissal by alleging new facts not

20  found in his complaint.  If facts exist to demonstrate Plaintiff was excused from filing a claim with

21  PMC before initiating his civil action, he must plead such facts in his complaint.[10]

22

23  / / /

24

25

---

26          [10] Compliance with the Act must be *affirmatively alleged in the complaint* and "failure to
    allege compliance or circumstances excusing compliance with [this] claim presentation requirement
27  [results in] a complaint . . . fail[ing] to state facts sufficient to constitute a cause of action."  *State v.*
    *Super. Ct.*, 32 Cal. 4th 1234, 1245 (2004); *see also Karim-Panahi v. Los Angeles Police Dept.*, 839
28  F.2d 621, 627 (9th Cir. 1998) (affirming dismissal of pendent state law claims against public employee
    where plaintiff failed to allege compliance with the Act).

1    **2.     STATE MEDICAL MALPRACTICE CLAIMS**

2         Both Defendants assert the Court should not exercise supplemental jurisdiction over

3    Plaintiff's medical malpractice claims because his federal EMTALA and HIPAA claims fail as a

4    matter of law.  [Doc. No. 7, p.4-5; Doc. No. 8, p.6-7.]  In addition, Defendants assert Plaintiff

5    cannot properly allege diversity jurisdiction.  [Doc. No. 7, p.5-6; Doc. No. 8, p.7-8.]  Neither

6    Defendant addresses the sufficiency of Plaintiff's medical malpractice allegations.

7         Because the Court has granted Plaintiff leave to amend his federal EMTALA claim against

8    PMC, the Court finds it premature to determine whether it will retain supplemental jurisdiction

9    over Plaintiff's medical malpractice claims in the event *all* his federal claims are dismissed with

10   prejudice.  Further, because Plaintiff has not alleged his action is based on diversity jurisdiction,

11   the Court declines to consider whether he *could* allege jurisdiction on this ground.  Accordingly,

12   the Court considers whether Plaintiff has alleged sufficient facts to state viable claims for medical

13   malpractice against Dr. Nelkin and PMC.

14        **(A)     Dr. Nelkin**

15        To establish a medical malpractice claim against Dr. Nelkin, Plaintiff must allege facts

16   demonstrating: (1) Dr. Nelkin had a duty to "use such skill, prudence, and diligence as other

17   members of his profession commonly possess and exercise;" (2) Dr. Nelkin breached that duty; (3)

18   there is "a proximate causal connection between [Dr. Nelkin's] negligent conduct and [Plaintiff's]

19   resulting injury; and (4) Plaintiff suffered actual loss or damage resulting from Dr. Nelkin's

20   negligence.  *Avivi v. Centro Medico Urgente Medical Center*, 159 Cal. App. 4th 463, 468 n.2

21   (2008).  "[M]ere proof that the treatment was unsuccessful is not sufficient to establish

22   negligence."  *Huffman v. Lindquist*, 37 Cal. 2d 465, 475 (1951) (citation omitted).  Similarly,

23   "[m]ere error of judgment, in the absence of a want of reasonable care and skill in the application

24   of his medical learning to the case presented, will not render a doctor responsible for untoward

25   consequences in the treatment of his patient."  *Id*. (citations omitted).  "The fact that a patient does

26   not make a complete recovery raises no presumption of the absence of proper skill and attention

27   upon the part of the attending physician."  *Scherer v. Eidenmuller*, 45 Cal. App. 372, 377 (1919).

28   / / /

Here, Plaintiff asserts Dr. Nelkin failed to exercise ordinary skill and care because he did not properly diagnose or stabilize the cause of Plaintiff's high blood pressure and chest pains. [Doc. No. 1 ¶21.]  According to Plaintiff, as a result of Dr. Nelkin's gross negligence, he "had to endure dangerously high blood pressure [for five weeks] . . . with unknown damage to affected systems because the medicines prescribed were not working to lower his blood pressure, all of which caused Plaintiff to suffer unnecessary physical and emotional pain due to a natural fear of eminent death, physical damage to his organs and possible vegetative states [sic] due to stroke, as a result of the delay in the diagnosis and failure by Hospital to stabilize Plaintiff's emergency medical condition."  [*Id*. at ¶¶19, 22.]  Plaintiff's conclusory statements, however, are insufficient to state a viable medical malpractice claim.

Plaintiff must do more than recite the elements of medical malpractice.  At a minimum, he must allege specific facts identifying Dr. Nelkin's allegedly negligent conduct and the harm Plaintiff suffered as a proximate result of that conduct.  Nowhere in the complaint does Plaintiff allege what Dr. Nelkin actually did.  Nor does Plaintiff allege what his blood pressure was upon arrival in the emergency department or upon discharge, to show his medical condition was not stabilized.  While Plaintiff asserts Dr. Nelkin discharged him in an unstable condition, the complaint does not provide any facts to support this allegation.   Accordingly, Plaintiff's medical malpractice claim against Dr. Nelkin is **DISMISSED** without prejudice, and with leave to amend.

**(B)** **Palomar Medical Center**

Because Plaintiff did not title any of his "Counts" nor identify which Defendant(s) are subject to any particular claim, it is unclear whether Plaintiff also seeks to allege a medical malpractice claim against PMC.  However, the Court finds Plaintiff's allegations that Dr. Nelkin, and others, were "employees" or "apparent employee[s]" of PMC; that they "act[ed] within the scope of their employment"; and that PMC "failed to exercise ordinary care" by negligently "failing to have in place proper procedures and protocols for the evaluation of patients in its emergency rooms," suggest he has attempted to do so.  [Doc. No. 1 ¶¶24, 28, 31.]  As pled, Plaintiff's allegations of medical malpractice against PMC are insufficient.  Plaintiff fails to assert facts that identify the duty PMC owed to Plaintiff and demonstrate how PMC breached its duty,

10cv514

1  thereby causing injury to Plaintiff.  *See, e.g., Contreras v. St. Luke's Hospital*, 78 Cal. App. 3d

2  919, 927 (1978); *Rice v. California Lutheran Hospital*, 27 Cal.2d 296, 299 (1945).  Accordingly,

3  Plaintiff's medical malpractice claim against PMC is **DISMISSED** without prejudice, and with

4  leave to amend.

5                                        <u>**CONCLUSION**</u>

6          For the reasons stated herein, the Court hereby **ORDERS** as follows:

7          (1)     Defendant Dr. Nelkin, M.D.'s motion to dismiss is **GRANTED**.  Plaintiff's

8  EMTALA and HIPAA claims against Dr. Nelkin are **DISMISSED WITH PREJUDICE**.

9  Plaintiff's cause of action for medical malpractice against Dr. Nelkin is **DISMISSED WITHOUT**

10  **PREJUDICE**, and with leave to amend.

11         (2)     Defendant PMC's motion to dismiss is **GRANTED**.  Plaintiff's HIPAA claim

12  against PMC is **DISMISSED WITH PREJUDICE**.  Plaintiff's EMTALA and medical

13  malpractice claims are **DISMISSED WITHOUT PREJUDICE,** and with leave to amend.

14         **IT IS SO ORDERED**.

15

16  DATED:  June 30, 2010

17

18                                      Hon. Michael M. Anello
                                        United States District Judge
19

20

21

22

23

24

25

26

27

28

10cv514